United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2192

_____

PVI, Inc., and William G. Skelly,     *
                                   *
          Appellees,               *
                                   *
        v.                       *    Appeal from the United States
                                   *    District Court for the Western
ratiopharm GmbH,                *    District of Missouri.
A German Corporation,         *
                                     *
          Appellant.               *

_____

Submitted: December 10, 1997

Filed: February 10, 1998

_____

Before FAGG, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In 1995, ratiopharm GmbH bought 51 percent of the stock of a pharmaceutical company called Martec. PVI, Inc., and William G. Skelly owned all of Martec's stock prior to the sale, and thus retained a 49 percent interest thereafter. In connection with the purchase, ratiopharm, PVI, and Mr. Skelly entered into a stockholders' agreement containing several options provisions, exercisable at various future times and under various conditions.

The clause at issue in this case provides that at any time after five years from the date of the agreement, PVI, Mr. Skelly, and another entity not a party to this suit each "ha[d] a separate option to require ratiopharm to purchase all, but not less than all, of their stock ... for the purchase price and upon the terms set forth in Sections 6 and 7." Under these last provisions, the purchase price was to be determined by the agreement of the parties, unless they were unable to agree, in which case they were simultaneously to submit to each other proposed prices "based on an appropriate multiple of Martec's earnings or sales and other factors deem[ed] appropriate." If the proposed prices were within 10 percent of each other, the purchase price would be the average of the two. If the proposed prices were not within 10 percent of each other, the parties were to select a neutral expert who would decide "which submitted purchase price best approximates the fair market value of the Stock." The determination of the expert would be "final, binding, and conclusive."

Later in 1995, PVI exercised its option. The parties were unable to agree on a price for PVI's and Mr. Skelly's interests, and the offers were not within 10 percent of each other. (Ratiopharm valued the stock that it was to purchase at $545,860; PVI and Mr. Skelly valued the stock that they were to sell at $36,750,000.) In accordance with the terms of the stockholders' agreement, the parties submitted their respective valuations to a neutral expert to resolve the dispute, and the dispute was seemingly resolved when the expert chose ratiopharm's valuation as the closer approximation of the fair market value of the stock. PVI, however, then brought an action for breach of contract asking for monetary and equitable relief. Nearly a year after the action was filed, ratiopharm moved in the district court[1] for a confirmation of the expert's valuation as an arbitration award. The district court denied the motion; ratiopharm appeals. We affirm.

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

Ratiopharm's motion for enforcement of the independent valuation as an arbitration award was based on the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. § 9, but we believe that confirmation under the FAA is unavailable in these circumstances. That is because the FAA provides that a party to an arbitration may apply to the court for confirmation of an arbitration award only "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." *Id.* Nowhere in the relevant agreement did the parties to this case provide that a judgment of the court should be entered upon the award. While the parties may argue about whether the expert's valuation was truly an arbitration and whether the prices that the parties submitted to the expert were submitted in accordance with the terms of the contract, they may not do so in the course of seeking a confirmation of the award under the FAA.

We recognize that several cases in other circuits have found the requisite agreement to have judgment entered in boilerplate similar to that contained in this agreement, namely, a recitation that "[t]he determination of such expert [or arbitrator] shall be final, binding and conclusive." The Seventh Circuit in *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386, 389-90 (7th Cir. 1981), *cert. denied*, 454 U.S. 838 (1981), for instance, found that the agreement required by the FAA need not be explicit, and that language such as "final and binding" satisfies the statutory requirement. The Second Circuit in *In re I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 426-27 (2d Cir. 1974), noted that the FAA's agreement requirement reflects a desire to "ensure that the parties have affirmatively agreed to the application of the federal substantive law contemplated by the Act," but the court nevertheless went on to hold that the parties in that case had expressed their consent to an entry of judgment by, among other things, using language like that quoted above.

Other courts, however, have refused to find the requisite agreement in this ambiguous environment. The Tenth Circuit, commenting on the thought process that

equates the phrase "final and binding" with the seemingly express terms required by the FAA, noted that the "logic is questionable" because § 9 requires that the parties agree "in the agreement," implying that an explicit enforcement agreement must be present in the relevant written document. *Oklahoma City Associates v. Wal-Mart Stores, Inc.*, 923 F.2d 791, 794 (10th Cir. 1991). The court also observed that "without more, it is equally plausible that a finality clause could be interpreted to mean [that] the parties intended to have the award enforced in <u>state</u> rather than federal court." *Id.* (emphasis in original).

If an award is "binding," the argument runs, it must necessarily be enforceable in a court of law. We agree. But we do not agree that the mere inclusion of the phrase "final and binding" in an agreement to arbitrate makes the award enforceable under the FAA. Perhaps there is an action to enforce this award, if it is one, under the relevant state law. At common law, for instance, the existence of an arbitration award created for one of the parties an obligation to pay money, enforceable by the other party in an action of debt.

Ratiopharm, however, has not asked for a remedy under state law, even though there is diversity between the parties, and the fact that it might have some other remedy is not relevant to the question of whether it has one under the FAA. Enforcement under the FAA brings all of the substantive provisions of the act to bear on the arbitration and award in dispute. An action under state law, on the other hand, might involve the application of different kinds of substantive rules and defenses. It is clear to us that Congress intended for the substantive provisions of the FAA to apply only when the parties affirmatively agreed that they should.

We therefore affirm the district court's denial of confirmation under the FAA.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.