**RHEEM MANUFACTURING COMPANY,**
Plaintiff/Respondent/Cross–Appellant,

v.

**PROGRESSIVE WHOLESALE SUPPLY COMPANY, Douglas Guardian Services Corporation, James Michael Decker, Mary Beth Decker,** Defendants,

and

**Judith Burket,**
Defendant/Appellant/Cross–Respondent.

No. ED 76255.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 1, 2000.

Application for Transfer to Supreme Court Denied Sept. 7, 2000.

Application for Transfer Denied Oct. 31, 2000.

James P. Krupp, Law Office of Krupp & Myers, Ballwin, for appellant.

Christopher Martin Hohn, St. Louis, for respondent.

SHERRI B. SULLIVAN, Judge.

Judith Burket (Appellant) appeals from the final judgment of the trial court and its order denying her post-trial motion for

judgment notwithstanding the verdict. Rheem Manufacturing Company (Rheem or Cross–Appellant) appeals from the final judgment of the trial court and its order denying its post-trial motion for judgment notwithstanding the verdict or alternatively for additur. We affirm in part and reverse in part.

*Facts*

Rheem, a Delaware corporation, manufactures heating units, air conditioners, and water heaters. Rheem sells its products to independent distributors, who then re-sell those products. Progressive Wholesale Supply Company (Progressive) was a Missouri corporation located in St. Louis County that distributed heating units, air conditioners, and other products. Beginning in 1981, Progressive became an independent distributor of Rheem products. James Decker owned one-third of the shares of Progressive, and was the vice-president of Progressive. Mary Beth Decker is the wife of James Decker. Richard Burket owned two-thirds of the shares of Progressive, and was the president of Progressive. Appellant was the wife of Richard Burket.

On June 2, 1981, in conjunction with the beginning of the distributor relationship between Rheem and Progressive, the owners of Progressive and their spouses, including Appellant, signed a Continuing Guaranty Agreement (Continuing Guaranty). Rheem obtained continuing guaranty agreements from individual owners of distributors to induce Rheem to extend credit to distributors. If a distributor could not pay its debts to Rheem, then Rheem could attempt to collect for any debts of the distributor from the guarantors. No other documents specifically addressing the terms and conditions of the distributorship arrangement between Rheem and Progressive were executed at the time the parties signed the Continuing Guaranty.

On June 9, 1981, Rheem extended a $200,000 line of credit to Progressive. On June 30, 1981, Rheem increased its line of credit to Progressive to $300,000.

On January 4, 1983, Rheem and Progressive entered into their first written Distributorship Agreement. On May 19, 1983, Rheem and Progressive entered into a written "Warehouse Agreement – Number Two." The credit limit allowed to Progressive by Rheem was increased to $750,000.00.

In 1986, Progressive entered into a bonded warehouse agreement with Rheem, providing that Douglas–Guardian Services Corporation (Douglas–Guardian) would safeguard the inventory shipped by Rheem to Progressive's warehouse and would inventory products that entered and left the warehouse. As Rheem shipped products to the Progressive warehouse, Douglas–Guardian representatives would receive those products into the warehouse. When Progressive sold one of the Rheem products in the warehouse, a representative of Douglas–Guardian would document and release the product from the warehouse. After a product was released from the warehouse, Progressive would have to pay Rheem for that product in two installments in the month following the month it was released.

Richard Burket died on February 6, 1990, after which time his shares of Progressive were transferred to a trust, of which Appellant was a beneficiary and a trustee. After Richard Burket's death, James Decker became acting President and continued with the day-to-day operation of the company. In 1993, Progressive repurchased Appellant's shares in Progressive from the trust in exchange for a promissory note for the approximate amount of $650,000.00, on which Progressive made monthly payments to the trust of approximately $8,000 for almost two years. Progressive made payments until November 1996, when Progressive ceased operations.

On November 21, 1996, James Decker telephoned Rheem personnel and informed them that Progressive's bank had can-

celled its line of credit and that Progressive was ceasing operations. Rheem dispatched personnel to the Progressive warehouse to take an inventory of the Rheem products there. According to Douglas–Guardian records, there should have been $1.3 million in inventory at the Progressive warehouse, for which Progressive had not yet paid Rheem. On November 22, 1996, Rheem's investigation revealed that there was only approximately $300,000 in inventory at the Progressive warehouse. Thus, there was approximately $1 million in missing inventory.

When Progressive ceased operations, its account with Rheem was approximately $2.1 million. This amount represented the total amount for products shipped to Progressive, for which Progressive had not yet paid. Subtracting the amount of the inventory at the Progressive warehouse (approximately $300,000), and the amount of the missing inventory (approximately $1 million), Progressive owed $775,625.60 on its account with Rheem. Rheem made a demand in writing upon Progressive for the payment of this sum, but Progressive failed to pay.

Rheem settled and compromised its claims against Douglas–Guardian in exchange for a payment to Rheem in the amount of $999,999. This amount represented the settlement of Rheem's claim against Douglas–Guardian for the loss of certain inventory that had been improperly removed from the Progressive warehouse. Pursuant to the terms of the Continuing Guaranty, Rheem sent Appellant a demand letter for $775, 625.60.

*Proceedings Below*

Rheem filed this lawsuit against Douglas–Guardian, Progressive, James and Mary Beth Decker, and Appellant. Rheem settled with Douglas–Guardian and dismissed its claims against Douglas–Guardian with prejudice. Rheem took default judgments against Progressive, James Decker, and Mary Beth Decker. According to Kenneth McKinney (McKin-

ney), former credit manager for Rheem, Rheem has not received any payments on Progressive's outstanding account with Rheem, and there is a current balance of $775,625.60 (exclusive of attorneys' fees, costs, and interest).

The case proceeded to trial against the only remaining defendant, Appellant, and the jury returned its verdict in favor of Rheem in the amount of $135,000. The jury attempted to amend the verdict form by adding language indicating that Rheem should bear its own attorneys' fees; however, the trial court struck that language from the verdict form.

The trial court entered judgment on the jury verdict. Appellant filed a motion for judgment notwithstanding the verdict. Rheem filed a motion for judgment notwithstanding the verdict or alternatively for additur and a motion to alter or amend the judgment to include awards of attorneys' fees, costs, and prejudgment interest. Neither party filed a motion for new trial.

The trial court heard the parties' post-trial motions on May 21, 1999. The trial court denied Rheem's motion for judgment notwithstanding the verdict and denied Appellant's motion for judgment notwithstanding the verdict from the bench on that date. Counsel for Appellant conducted a testimonial hearing on the record to factually inquire about Rheem's request for attorneys' fees and costs. The trial court then took Rheem's post-trial motion to alter or amend the judgment to add attorneys' fees, costs, and prejudgment interest under submission.

Based upon the evidence adduced at the hearing on counsel fees, the trial court entered an amended judgment on June 16, 1999, awarding Rheem $21,000 in attorneys' fees and costs, for a total amended judgment of $156,000. The trial court denied Rheem's request for prejudgment interest.

Appellant filed her notice of appeal on May 21, 1999. Rheem filed its notice of

appeal on June 25, 1999, within 10 days of the entry of the amended judgment.

*Applicable Law*

■ This court applies the law of the forum to procedural issues, and thus Missouri law governs the standard of review. *Reis v. Peabody Coal Co.,* 997 S.W.2d 49, 59 (Mo.App. E.D.1999).

■ The Continuing Guaranty at issue in this case provides that New York law governs its terms: "[T]his guaranty shall be governed by, and construed in accordance with, the laws of the State of New York and only defenses allowed by such laws shall be interposed in any action hereon." Missouri courts honor such contractual choice of law clauses. *See Stone v. Crown Diversified Indus. Corp.,* 9 S.W.3d 659, 666 (Mo.App. E.D.1999). Accordingly, we will apply New York law to the substantive issues in this case.

*Standard of Review*

Three of Appellant's four points on appeal and one of Cross–Appellant's two points on appeal challenge the trial court's failure to direct a verdict or grant judgment notwithstanding the verdict.

■ If a plaintiff fails to make a submissible case, then entry of judgment notwithstanding the verdict for the defendant is proper. *Reis,* 997 S.W.2d at 59. To make a submissible case, substantial evidence is required for every fact essential to liability. *Id.* The question of whether the evidence in a case is substantial and whether the inferences drawn are reasonable present questions of law. *Id.*

■ When reviewing a failure to grant a directed verdict for the defendant, the evidence is viewed in the light most favorable to the plaintiff, the plaintiff is afforded all reasonable inferences from the evidence, and any of the defendant's evidence that contradicts the plaintiff's claim is disregarded. *Crabtree v. Bugby,* 967 S.W.2d 66, 70 (Mo.banc 1998). If the facts are such that reasonable minds could draw

differing conclusions, the issue becomes a question for the jury, and a directed verdict is improper. *Id.* In reviewing the trial court's denial of a motion for judgment notwithstanding the verdict, this Court views the evidence in the light most favorable to the nonmoving party and gives that party the benefit of all reasonable inferences. *Wolfe v. Central Mine Equipment Co.,* 895 S.W.2d 83, 87 (Mo.App. E.D.1995). Granting a judgment notwithstanding the verdict is an extreme measure which should be done only when all of the evidence and reasonable inferences to be drawn therefrom are so strongly against the opponent of the moving party's case there is no room for reasonable minds to differ. *Id.* at 86–87.

We will address the standard of review for Appellant's and Cross–Appellant's remaining points in the discussion of those points.

*Appellant's Appeal*

I.

In her first point on appeal, Appellant maintains that the trial court erred in failing to direct a verdict or grant judgment notwithstanding the verdict in favor of Appellant because Rheem did not make a submissible case on liability as a matter of law in that the Continuing Guaranty was not enforceable because it was ambiguous, and the parties did not intend that it be enforceable and the terms and obligations of the underlying agreement were changed. We disagree.

■ A continuing guaranty is a type of guaranty agreement in which the parties contemplate guaranteeing a series of future debts or transactions, as opposed to a single debt or transaction. *Oak Beverages, Inc. v. Ehrlich,* 224 A.D.2d 403, 637 N.Y.S.2d 758, 759 (1996). A continuing guaranty is a contract pursuant to which a person agrees to be a secondary obligor for all future obligations of the principal obligor to the obligee. Restatement (Third) of Suretyship and Guaranty section

16 (1996). A continuing guaranty is terminable, and may be terminated by the continuing guarantor by notice to the obligee. *Id.*

The Continuing Guaranty in the instant case provides in pertinent part:

> The undersigned hereby guarantees, absolutely and unconditionally, to Rheem the prompt payment of any and all indebtedness, liabilities and obligations of [Progressive] to Rheem, of whatever nature and amount, arising of in whatever manner, whether now existing or hereafter incurred, whether on open account or evidenced by any instrument or document or otherwise, whether matured or inchoate and whether absolute or contingent.
>
> This guaranty is a continuing guaranty and shall remain in full force and effect irrespective of any interruptions in the business relations of [Progressive] with Rheem.

In the Continuing Guaranty, Appellant waives all notices:

> The undersigned hereby waives (a) notice of acceptance hereof and of the incurring or contracting of any Indebtedness by the Customer; (b) presentment and demand for payment of any of the Indebtedness; (c) protest and notice of dishonor or default to any party with respect to any of the Indebtedness; (d) all other notices to which the undersigned might otherwise be entitled; and (e) any demand for payment under this guaranty.
>
> The undersigned hereby agrees that at any time and from time to time ... without notice or assent from the undersigned (a) any of the Indebtedness ... may be realized upon, subordinated, enforced, exchanged, changed, altered, renewed, extended, accelerated, continued, surrendered, compromised, waived, or released in any manner in whole or in part and (b) Rheem may ... make any loan(s) or advance(s) and/or continue credit and/or extend credit to [Progressive] and generally may deal with [Pro-

gressive], the Indebtedness, such obligation, party, security or property as Rheem may see fit; and the undersigned shall remain bound under this guaranty notwithstanding any of the foregoing.

Appellant argues that there were material modifications in Progressive's obligations that discharged Appellant's liability. Specifically, these modifications included: (1) Rheem increasing the line of credit to Progressive; (2) the 1983 Distributorship Agreement between Rheem and Progressive; (3) Rheem entering into a bonded warehouse/insuring arrangement with Douglas–Guardian and Progressive; (4) a change in payment terms from 1981 – 1986; and (5) Richard Burket's death in 1990, which led to a change in control of Progressive's business to James Decker. Appellant cites *Citizens Bank of Smithville v. Lair,* 687 S.W.2d 268, 270 (Mo.App. W.D.1985), for its holding that a material alteration in, or departure from the contract of guaranty without the guarantor's consent will discharge him, however, the Continuing Guaranty provides that New York law governs all defenses.

In the instant case, as evidenced by its language set forth above, the Continuing Guaranty is very broad in its scope, encompassing any and all indebtedness, whether incurred in the present or future. Continuing guaranty agreements may be drafted broadly enough to encompass future indebtedness, as the one did here, such that changes in the original obligations guaranteed are non-material. *Trustco Bank of New York v. Sage,* 238 A.D.2d 839, 656 N.Y.S.2d 542, 543 (1997). The court in *Trustco Bank* specifically said, "Implicit in such a broad agreement to guarantee payment of all debts, including those not yet in existence, is an acknowledgement that the particular terms and conditions of those obligations are not material, except insofar as expressly or

implicitly set forth in the guaranty itself." *Id.*

■ We find the modifications cited by Appellant, including an increase in credit, a change in payment terms, reducing the distribution agreement to writing and agreeing to a bonded warehouse agreement for added security of the inventory, are not material changes. The rationale for discharging a guarantor when the underlying contract is modified, i.e., that the alteration essentially substitutes a new obligation for the old, suggests that discharge is not warranted where, as here, the guaranty is a continuing one, and the "new obligations" created by the modifications cited by Appellant, if independently incurred, plainly would have come within the scope of its coverage. *Id.* We additionally find that the death of Appellant's husband inherently is not a change in the terms of the agreement.

Appellant also argues the Continuing Guaranty contains some latent ambiguities, namely: (1) the Continuing Guaranty did not specify that Rheem could hold Appellant liable six years after her husband's death; (2) the parties did not contemplate that Appellant could be held liable on obligations arising 16 years after the execution of the Continuing Guaranty; (3) the Continuing Guaranty does not specify what obligations Appellant guarantees or the amount of credit or other obligations she guarantees; and (4) the Continuing Guaranty does not contemplate that Appellant would be liable for the acts of others in causing Progressive to incur its indebtedness.

The Continuing Guaranty specifically provides that "the obligations hereunder shall be joint and several." Accordingly, Appellant's husband's death does not affect her liability on the guaranty.

■ The lapse of time between the execution of the Continuing Guaranty and the incurring of indebtedness likewise does not affect Appellant's liability. *Apple Bank for Savings v. Aries Striping, Inc.,*

240 A.D.2d 524, 658 N.Y.S.2d 682, 683 (1997). "It is well settled that a guarantee that is continuing and applicable to future incurred obligations and that may be terminated or modified only in writing is enforceable until otherwise terminated or modified in writing. It cannot expire by mere time, conduct, or change of circumstance." *Id.* While Appellant had the right under the Continuing Guaranty to terminate the guaranty by providing written notice to Rheem, neither Appellant nor anyone acting in her behalf ever attempted to terminate the Continuing Guaranty, even when she was represented by counsel after her husband's death.

■ The last two alleged ambiguities are irrelevant in light of the specific language of the Continuing Guaranty that Appellant is liable for any indebtedness of Progressive "of whatever nature and amount, arising in whatever manner."

## II.

In her second point on appeal, Appellant maintains that the trial court erred in failing to direct a verdict or grant judgment notwithstanding the verdict in favor of Appellant because Rheem did not make a submissible case on liability as a matter of law in that the Continuing Guaranty was not enforceable because there was no contemporaneous written agreement executed by the parties for the underlying obligation alleged at the time the guaranty was entered into, or for the obligations alleged by any of the subsequent agreements. Appellant further argues that Rheem did not rely on the Continuing Guaranty with respect to the alleged obligation at the time the guaranty was made, and Appellant was thereby released or discharged from all liability on the guaranty. Appellant also states that McKinney testified as to Rheem's lack of reliance on the financial capability of Appellant, while Rheem was increasing Progressive's obligations by sending more inventory to its warehouse.

A guaranty or continuing guaranty must be supported by consideration. Restatement (Third) of Suretyship and Guaranty section 9 (1996), 38A C.J.S. *Guaranty* section 23 (1996). Consideration may be expressed on the face of a written guaranty. Restatement (Third) of Suretyship and Guaranty section 9(2)(b) (1996). For example, in *Teitelbaum v. Mordowitz*, 248 A.D.2d 161, 669 N.Y.S.2d 811, 811 (1998), the court said, "Consideration for a guarantee can be past or executed, where, as here, the guarantee recites in writing that it is being given in exchange for a loan and there is no question that the proceeds of the loan were received." Consideration supporting the underlying obligation can also support the guaranty. *See* 38A C.J.S. *Guaranty* section 27 (1996). An extension of credit is ample consideration for the execution of a guaranty. *Movado Group, Inc. v. Presberg*, 259 A.D.2d 371, 687 N.Y.S.2d 116, 116 (1999). In *Movado Group*, the court held that "Defendant's promise to pay all of his company's debts to plaintiff on an 'absolute, unconditional and continuing' basis, in consideration for extension of credit, was a broad commitment, certainly not limited to one opening transaction, as defendant would read it. Such a written expression of past consideration satisfies General Obligations Law § 5–1105." *Id.* at 116–117. (citations omitted).

In the instant case, the Continuing Guaranty expresses adequate consideration on its face, stating that it was given "[f]or and in consideration of any existing indebtedness, liabilities, and/or obligations ... and of Rheem's forbearance thereon and/or in order to induce Rheem from time to time in its discretion to make any loan(s) or advance(s) and/or to continue credit and/or extend credit in any manner" to Progressive. Additionally, the Continuing Guaranty is supported by the consideration of the underlying oral agreement between Rheem and Progressive for Rheem to supply products to Progressive on credit and for Progressive to act as an independent distributor and sell those products. We find there is sufficient consideration in this case to support the Continuing Guaranty. Accordingly, we need not address Appellant's argument as to reliance.

### III.

In her third point, Appellant claims the trial court erred in failing to direct a verdict or grant judgment notwithstanding the verdict in favor of Appellant because as a matter of law Rheem did not make a submissible case on damages for anything more than nominal damages, and did not prove that any damages it was claiming were directly or proximately caused by the alleged breach of the Continuing Guaranty by Appellant. In support of her point, Appellant asserts that McKinney's testimony regarding the amount of damages that are attributable to any breach of the Continuing Guaranty by Appellant lacked adequate foundation in proving the actual damages incurred by Rheem, because Rheem is only claiming damages that Rheem suffered after January 1, 1996. Appellant states that McKinney and Rheem cannot accurately determine when or how the inventory left Progressive's warehouse, and due to the inaccurate record keeping by Douglas–Guardian, it is impossible to tell at what point in time from 1981 to November 1996 that the missing items claimed as damages actually left the warehouse without being paid for by Progressive. Appellant also argues that the only evidence presented on damages was the testimony of McKinney, who testified that the documents recording the release of inventory from the warehouse that he relied upon to calculate Rheem's damages were inaccurate.

The evidence at trial demonstrated that on November 21, 1996, Progressive's receivable balance was $2.1 million. There was approximately $300,000 remaining in inventory. Progressive settled with Douglas–Guardian for $999,999, its contractual

limit of liability, which amount represented the total amount of inventory that was missing from the warehouse. Subtracting these amounts from the $2.1 million total receivable resulted in a total outstanding balance of $775,625.60. We find there was sufficient evidence presented at trial of Rheem's damages in the amount of $775,-625.60.

### IV.

■ Appellant's fourth point on appeal states that the trial court erred in entering its order and separate amended judgment on June 16, 1999, because the court did not have jurisdiction over the case at that time. The court entered a "judgment" on the jury verdict on March 23, 1999, ordering that Rheem recover $135,000.00 and costs from Appellant.

However, that judgment did not dispose of the requests for prejudgment interest and attorney's fees which the trial court did not submit to the jury because these were matters for the court. The record and pleadings indicate that these matters were still under consideration. Rheem's motion to alter or amend judgment submitted its calculations, affidavits and exhibits supporting its request for prejudgment interest and attorney's fees. The court entered an "amended judgment" on June 16, 1999, disposing of those claims.

Appellant maintains that Missouri Rule of Civil Procedure 81.05 (1999)[1] says that all after-trial motions shall be disposed of at the same time and that any after-trial motions not ruled upon at that time are deemed to be overruled. Accordingly, reasons Appellant, since Rheem's motion to alter or amend judgment was not ruled upon by the court on May 21, 1999, it should have been deemed to be overruled at that time, and thus the court did not retain jurisdiction to enter its later order and separate amended judgment of June 16, 1999.

---

1. This rule has since been amended. All further rule references are to Mo. R. Civ. P.

■ A judgment, order or decree of the trial court is final and appealable only when it disposes of all the issues for all parties in the case and leaves nothing for future determination. *McKean v. St. Louis County,* 936 S.W.2d 184, 185–86 (Mo.App. E.D.1996). Appellant's argument is misplaced because the trial court did not issue its final judgment until it disposed of the issues of attorney's fees and expenses in the June 16, 1999 amended judgment. *See McKean,* 936 S.W.2d at 185–86; *Artisan Const., Inc. v. Greuter,* 975 S.W.2d 958, 958 (Mo.App. S.D.1998); *Ackerson v. Runaway II, Inc.,* 961 S.W.2d 933, 934 (Mo.App. S.D.1998); *Woodman Engineering Co. v. Licking Const. and Development Corp.,* 786 S.W.2d 178, 180 (Mo.App. W.D.1990). Accordingly, Appellant's fourth point is without merit.

Appellant's four points on appeal are denied.

### *Rheem's Cross–Appeal*

### I.

■ Rheem's first point on cross-appeal is that the trial court erred in denying Rheem's motions for directed verdict and judgment notwithstanding the verdict because Rheem was entitled to compensatory damages in the amount of $775,625.60 as a matter of law, in that this was the undisputed amount of Rheem's damages.

This amount, $775,625.60, was not the undisputed amount of Rheem's damages, and those damages were not, as Rheem claims, liquidated damages. The term "liquidated damages" is applicable "when the amount of the damages has been ascertained by the judgment in the action, or when a specific sum of money has been expressly stipulated by the parties to a bond or other contract as the amount of damages to be recovered by either party for a breach of the agreement by the other." Black's Law Dictionary 468 (4 th

---

(2000), unless otherwise indicated.

ed.1968). The Continuing Guaranty did not on its face set forth the amount of damages allegedly suffered by Rheem, nor was the amount of its damages ascertained by judgment. Rather, the assessment of damages in this case, especially in light of the missing inventory and questionable bookkeeping, was dependent upon questions of fact and the credibility of Rheem's witness McKinney, to be decided by the jury. *Baker v. Guzon,* 950 S.W.2d 635, 641 (Mo.App. E.D.1997) (A jury is free to believe all, part, or none of the testimony presented, and is the sole arbiter of its weight). In this case, it is apparent from the verdict that the jury believed only part of McKinney's testimony. Rheem's point one on cross-appeal is denied.

## II.

Rheem's second point on cross-appeal avers that the trial court erred in denying Rheem's motion to alter or amend the judgment to include an award of prejudgment interest, because under New York law a successful claimant in a breach of contract action is entitled to prejudgment interest regardless of whether damages are liquidated or unliquidated. In support of its argument Rheem states that it successfully recovered on its breach of continuing guaranty claim in the amount of $135,000 and is entitled to prejudgment interest on that amount or any greater amount awarded by this Court.

Missouri has adopted the Restatement (Second) of Conflict of Laws (1971) in contract actions. *Ernst v. Ford Motor Co.,* 813 S.W.2d 910, 921 (Mo.App. W.D.1991). The Restatement provides that the measure of damages for a breach of contract, including specifically the issue of interest, is governed by the parties' choice of law. Restatement (Second) of Conflict of Laws section 207, comment e (1971). It is not a matter of procedure but of substance. *International Minerals & Chemical Corp. v. Avon Products, Inc.,* 889 S.W.2d 111, 121 (Mo.App. E.D.1994).

Under New York law, a successful claimant in a breach of contract action is entitled to an award of prejudgment interest computed from the earliest ascertainable date the cause of action existed, regardless of whether the damages are liquidated or unliquidated. *International Minerals & Chemical Corp.,* 889 S.W.2d at 121, *Love v. State,* 78 N.Y.2d 540, 577 N.Y.S.2d 359, 361, 583 N.E.2d 1296 (1991). In this case, the law of New York clearly dictates that Rheem is entitled to prejudgment interest.

In addition to the issues addressed in the briefs, Rheem has requested, by motion filed with this court, that it be awarded attorney's fees for this appeal. Attorney fees may be awarded on appeal if they are based on a written agreement that is the subject of the issues presented in the appeal. *Ashland Oil, Inc. v. Warmann,* 869 S.W.2d 910, 913 (Mo.App. E.D. 1994). In this case, Rheem's request for an award of attorney's fees is based on the Continuing Guaranty, which provides in pertinent part: "The undersigned agrees to pay to Rheem upon demand from time to time any and all expenses (including counsel fees) incurred by Rheem in connection with this guaranty or any of the Indebtedness guaranteed hereunder or the enforcement or collection of either." As such, we find that Rheem is entitled to attorney's fees on appeal and remand the issue of proper apportionment of appellate attorney's fees for consideration by the trial court. *American Nat. Ins. Co. v. Noble Communications Co., Inc.,* 936 S.W.2d 124, 134 (Mo.App. S.D.1996).

### Conclusion

Rheem's motion for attorney's fees on appeal is granted, with directions to the trial court to determine a reasonable award of such fees. The trial court's order denying Rheem's motion for prejudgment interest is reversed and remanded for further proceedings consistent with this opin-

ion. The remainder of the judgment of the trial court is affirmed.[2]

KATHIANNE KNAUP CRANE, P.J. and ROBERT G. DOWD, Jr. J., concur.

**2.** Appellant's Motion to Dismiss Rheem's    Cross–Appeal is denied.