# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2692

_____

| | | |
|---|---|---|
| PVI, Inc., and William G. Skelly, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| ratiopharm GmbH, | * | District of Missouri. |
| A German Corporation, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 12, 2001

Filed: June 7, 2001

_____

Before WOLLMAN, Chief Judge, and BOWMAN and MORRIS SHEPPARD
ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

PVI, Inc., and William Skelly (collectively, PVI) were minority stockholders in
Martec, Inc., a pharmaceutical company. In 1995, PVI exercised an option that
required ratiopharm, Martec's majority stockholder, to purchase PVI's interest in
Martec. Although an independent appraiser determined a price at the request of the
parties, PVI refused to turn over the stock certificates and sued ratiopharm, claiming,
among other things, that ratiopharm had breached the stockholders' agreement as well

as a fiduciary duty to PVI; ratiopharm counterclaimed, requesting the district court to compel PVI to hand over the stock certificates.

The district court granted summary judgment to ratiopharm on PVI's complaint and on the counterclaim, and also awarded to ratiopharm its attorneys' fees along with prejudgment interest on those fees. PVI appeals. We affirm the grants of summary judgment on ratiopharm's counterclaim and on PVI's claim for breach of fiduciary duty, but reverse the grant of summary judgment on PVI's claim for breach of contract.

I.

In 1990, ratiopharm purchased 51 percent of the stock of Martec, which had been wholly owned by PVI. At that time, ratiopharm and PVI entered into a stockholders' agreement that gave PVI the right to require ratiopharm to purchase the remaining 49 percent of Martec stock at any time after five years. In 1995, PVI gave notice to ratiopharm that it was exercising this option.

PVI and ratiopharm were unable to agree on a price, a circumstance in which the stockholders' agreement required each party to submit a proposed purchase price "based on an appropriate multiple of Martec's earnings or sales and other factors deem[ed] appropriate." The agreement further provided that if the proposed prices were within 10 percent of each other, the price was to be the average of the two. If not, the parties were to select an independent expert to "determine which submitted purchase price best approximates the fair market value of the Stock, based on an appropriate multiple of Martec's earnings or sales, and such other facts as such expert considers appropriate." The agreement stated that the expert's determination "shall be final, binding and conclusive upon all Stockholders."

Pursuant to this agreement, PVI submitted a price of $36,750,000 for the Martec stock, while ratiopharm submitted a price of $545,860. PVI believed that ratiopharm's submission was not based on an appropriate multiple of Martec's earnings and thus

violated the stockholders' agreement. PVI then notified ratiopharm by letter that "[a]lthough we believe that ratiopharm has failed to comply with its obligations under the Agreement, we intend to continue with the procedures set forth in the Agreement and trust that ratiopharm will proceed in good faith as contemplated by the agreement. *In doing so, however, neither [PVI] nor Mr. Skelly is waiving any right associated with ratiopharm's breach*" (emphasis supplied).

PVI and ratiopharm then completed the valuation process, with each party making substantial efforts to persuade the expert appraiser to select its proposed price. When the expert appraiser selected ratiopharm's price as better approximating the fair market value of the stock, PVI rejected ratiopharm's tender of the selected amount and refused to deliver the stock certificates.

PVI then sued ratiopharm, alleging that ratiopharm had violated the stockholders' agreement by proposing an inappropriate price for the Martec stock. PVI also claimed, in an unrelated count, that ratiopharm had breached a fiduciary duty owed to PVI by transferring Martec's manufacturing facilities to a ratiopharm affiliate in a transaction that occurred after PVI exercised the option to sell its Martec stock. In a counterclaim, ratiopharm sought specific performance of the stockholders' agreement, contending that PVI should be required to deliver its stock for the price that the appraiser had selected.

After the district court granted summary judgment to ratiopharm on PVI's claim and on the counterclaim, both PVI and ratiopharm requested the court to reopen the judgment pursuant to Fed. R. Civ. P. 59(e): PVI sought interest on the purchase price of the Martec stock and ratiopharm sought attorneys' fees. The district court rejected PVI's request, but awarded ratiopharm its requested attorneys' fees in full, an amount totaling approximately $1,156,130, of which approximately $104,130 was prejudgment interest.

II.

We first consider whether the district court properly granted summary judgment to ratiopharm on PVI's breach of contract claim and ratiopharm's counterclaim for specific performance. We review a grant of summary judgment *de novo*, giving the non-moving party (PVI in this case) the most favorable reading of the record as well as the benefit of any reasonable inferences that arise from the record. *See Anderson v. North Dakota State Hospital*, 232 F.3d 634, 635 (8th Cir. 2000).

PVI contends that ratiopharm submitted a price for the Martec stock that was not based on an appropriate multiple of Martec's earnings. If this is true, ratiopharm broke the stockholders' agreement, since it requires ratiopharm to submit a price based on such a multiple. Because of the current procedural posture of the case, we assume that ratiopharm's price did not comply with the stockholders' agreement and then consider whether PVI's subsequent conduct prevents it from asserting this breach.

If ratiopharm's submitted price was in breach of the stockholders' agreement, PVI had an immediate cause of action against ratiopharm, and was entitled to obtain whatever damages it suffered as a result of ratiopharm's breach. PVI's right to damages for the breach, however, does not prevent it from going forward with the remainder of the contract: An injured party may choose to continue a contract after a breach and nevertheless bring an action for the damages that resulted from the breach. *See* 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 8.15 at 490-91 (2d ed. 1998). This is the course of action that PVI chose to take in this case, going forward with the appraisal process and bringing an action for partial breach of the stockholders' agreement.

That does not mean that PVI's decision to go forward with the terms of the stockholders' agreement by participating in the appraisal process is without consequences. By proceeding under the agreement, PVI accepted, as the agreement puts it, the appraisal as a "final, binding and conclusive" determination of the value of

the Martec stock. When "one party to a contract continues performance after a breach by the other he must continue on the contract terms," *Newark Slip Contracting Co. v. New York Credit Men's Adjustment Bureau*, 186 F.2d 152, 154 (2d Cir. 1951), *cert. denied*, 341 U.S. 931 (1951); *see generally* 2 Farnsworth, *Farnsworth on Contracts* § 8.15 at 490-91, noting that a party who chooses to continue a contract after a breach is not itself excused from performance.

Because PVI entered the appraisal process, it may not subsequently challenge the appraiser's conclusion that $545,860 better approximated the value of the Martec stock. We therefore hold that the district court properly granted summary judgment to ratiopharm on its counterclaim for specific performance of the contract, because ratiopharm is entitled to buy the Martec stock at the price of $545,860.

### III.

This holding does not by itself have any implications for PVI's claim for damages from ratiopharm for breach of the stockholders' agreement. PVI's damages, if any, arise from ratiopharm's submission of a price that was not based on an appropriate multiple of Martec's earnings. The fact that ratiopharm prevailed in the valuation proceeding indicates only that the expert's estimation of the value of the Martec stock was closer to ratiopharm's proposed price of $545,860 than it was to PVI's proposed price of $36,750,000. That determination has no bearing on the question of whether ratiopharm's proposed price was appropriate.

If ratiopharm submitted an inappropriate price, however, this injured PVI, because the inappropriate submission resulted in the appraiser's choice of a lower purchase price than if ratiopharm had made an appropriate submission. If, for example, the lowest appropriate submission would have been $10,545,860, PVI suffered $10,000,000 in damages, since the appraiser would have chosen $10,545,860 as the purchase price instead of ratiopharm's inappropriate submission of $545,860. The measure of PVI's damages, therefore, would be the difference between the lowest

appropriate submission and $545,860, ratiopharm's actual submission. (It is just possible that the measure of damages would be different. If the lowest appropriate submission turned out to be within 10 percent of PVI's submission, or at least $33,075,000, PVI's damages would equal the average of this submission and its own submission, minus $545,860. This is because, as noted earlier, the contract stipulated that the purchase price would be the average of the two submissions should they be within 10 percent of each other.)

Ratiopharm contends, however, that by participating in the appraisal process PVI is precluded from asserting a breach. Ratiopharm presents several theories in support of this contention and we address each of them in turn.

First, ratiopharm maintains that PVI may not challenge the result of the valuation proceeding because it amounted to a binding arbitration award. We have previously rejected ratiopharm's contention that the valuation proceeding was an arbitration for purposes of the Federal Arbitration Act, *see* 9 U.S.C. § 9, *see PVI, Inc. v. ratiopharm GmbH*, 135 F.3d 1252, 1254 (8th Cir. 1998), but we noted there that "[p]erhaps there is an action to enforce this award, if it is one, under the relevant state law," *id.* Since, as we have said, the stockholders' agreement specifies that it is to be governed by Delaware law, ratiopharm now maintains that the result of the proceeding amounts to an award under the Delaware Uniform Arbitration Act, *see* Del. Code Ann. tit. 10, §§ 5701-5725.

It is unclear to us, however, whether Delaware law would consider this appraisal proceeding to be an arbitration. *Compare DMS Properties-First, Inc. v. P. W. Scott Associates, Inc.*, 748 A.2d 389, 391 (Del. 2000), holding that a party may not be forced to arbitrate a dispute in the absence of a clear agreement to do so, *with Closser v. Penn Mutual Fire Insurance Co.*, 457 A.2d 1081, 1087 (Del. 1983), holding that a similar appraisal process in an insurance contract constituted a binding arbitration.

We need not decide this question, however, because its answer is irrelevant to PVI's action for damages. Even if the appraisal process was an arbitration, the appraiser merely decided that $545,860 was closer to Martec's true value than $36,750,000 was. As we have already stated, PVI is bound by this conclusion. The appraiser was not asked, nor did he decide, whether ratiopharm's value was based on an appropriate multiple of Martec's sales. PVI's action for breach of contract, therefore, is unrelated to whether the valuation proceeding should be characterized as an appraisal or an arbitration.

Second, ratiopharm contends, and the district court held, that by engaging in the valuation proceeding PVI waived its rights resulting from any breach of the stockholders' agreement by ratiopharm, or at least that PVI was estopped from enforcing those rights. We cannot agree with either of these contentions.

Since the agreement provides that it "shall be subject to and construed under the laws of the State of Delaware" and Missouri courts regularly give effect to such clauses, *see Rheem Manufacturing Co. v. Progressive Wholesale Supply Co.*, 28 S.W.3d 333, 339 (Mo. Ct. App. 2000), we look to the law of Delaware to determine whether waiver or estoppel principles apply to the case at hand. Delaware law adheres to the familiar legal principle that a "waiver is the intentional relinquishment of a known right," *Nathan Miller, Inc. v. Northern Insurance Co. of New York*, 39 A.2d 23, 25 (Del. Super. 1944). PVI's letter to ratiopharm, however, specifically stated that it was not "waiving any right associated with ratiopharm's breach," and thus PVI manifestly did not intentionally relinquish its rights with respect to a breach of the stockholders' agreement by ratiopharm. There is no waiver here.

We believe that estoppel principles are equally inapplicable to the facts of this case, since those principles require a showing that the party seeking the estoppel relied to its detriment on the other party's conduct. *See Wilson v. American Insurance Co.*, 209 A.2d 902, 903-04 (Del. 1965). We fail to see what conduct of PVI was relied

-7-

upon by ratiopharm. PVI's participation in the valuation process could not be relied upon by ratiopharm as a representation that PVI would not sue for breach because PVI specifically stated that its participation did not alter its rights with respect to a breach by ratiopharm. Any reliance, therefore, that ratiopharm placed on PVI's participation was unjustified, and thus PVI is not estopped from asserting ratiopharm's breach.

Finally, although ratiopharm has not raised the matter of election of remedies by name, it has continually alluded to the unfairness of PVI's attempt to obtain a favorable price in the appraisal process and, after failing to do so, seeking a similar result in the courts. "Election of remedies is, in the words of one commentator, '[the] legal version of the idea that [a plaintiff may not] have his cake and eat it too.' ... A plaintiff must elect among remedies when he has available inconsistent remedies for the redress of a single right," *Grogan v. Garner*, 806 F.2d 829, 839 (8th Cir. 1986), quoting Dan B. Dobbs, *Handbook on the Law of Remedies* § 1.5 at 14 (1973); *see also Stoltz Realty Co. v. Raphael*, 458 A.2d 21, 23 (Del. 1983). *But see also* E. Allan Farnsworth, *Changing Your Mind: The Law of Regretted Decisions* 188 (1998), noting that this doctrine "has now fallen into disrepute."

The doctrine of election of remedies is inapplicable here, however, because PVI did not have "inconsistent remedies for the redress of a single right," *Grogan*, 806 F.2d at 839. The appraisal process was not a remedy for ratiopharm's breach of contract; it was merely a contractual method for determining the value of the Martec stock. The process was not intended to determine the validity of ratiopharm's submission, and thus could not redress ratiopharm's breach other than by awarding PVI the right to buy the stock at PVI's proposed price if that price was closer to the expert's valuation than ratiopharm's inappropriately low submission.

This lawsuit, however, is specifically designed to redress that breach. To use the example discussed earlier, if the lowest appropriate submission was $10,545,600, the appraiser was nonetheless confronted by a choice between ratiopharm's proposal of

$545,600 and PVI's proposal of $36,750,000, leaving PVI uncompensated for ratiopharm's breach. An action for breach, however, would allow PVI to recover $10,000,000 in damages. These two courses of conduct are thus neither inconsistent nor designed to redress a single right. The doctrine of election of remedies is therefore inapplicable here.

Because we have rejected each of ratiopharm's contentions, we hold that PVI should be allowed to proceed with its action for breach of the stockholders' agreement. PVI may attempt to show that it suffered damages as a result of ratiopharm's submission of a price that was not based on an appropriate multiple of Martec's earnings. We therefore reverse the district court's grant of summary judgment to ratiopharm on PVI's breach of contract claim.

IV.

PVI also claimed in the district court that ratiopharm breached a fiduciary duty to PVI by transferring Martec's manufacturing facilities to a ratiopharm affiliate. PVI concedes that this transfer occurred after it exercised its option to sell its Martec stock but maintains that because it was still the legal owner of the stock, it had the right to challenge ratiopharm's actions.

Any lawsuit that PVI could bring to challenge this action would, under Missouri law, be in the nature of a shareholders' derivative suit on behalf of Martec. *See Peterson v. Kennedy*, 791 S.W.2d 459, 464 (Mo. Ct. App. 1990). When a shareholders' derivative suit is in federal court under diversity jurisdiction, the corporation must be joined as a nominal defendant if the pleadings make clear that the corporation opposes the suit, as it does here. *See Smith v. Sperling*, 354 U.S. 91, 96-97 (1957). As the district court pointed out, however, naming Martec as a defendant would have destroyed the court's diversity jurisdiction, because both PVI and Martec are Delaware corporations.

-9-

Furthermore, we conclude that PVI has no standing under Missouri law to bring a shareholders' derivative suit on behalf of Martec. The stockholders' agreement states that PVI's option, once exercised, is irrevocable, and under Delaware law a purchaser of non-publicly traded stock, such as the Martec stock, is entitled to specific performance of the sale agreement. *See Lineberger v. Welsh*, 290 A.2d 847, 848-49 (Del. Ch. 1972); *see also Yates v. Bridge Trading Co.*, 844 S.W.2d 56, 60 (Mo. Ct. App. 1992) (applying Delaware law to stock issuances by Delaware corporations). Once PVI exercised its option, the ownership of the Martec stock was to pass to ratiopharm, subject only to a determination of the purchase price. Under these circumstances, the Delaware courts would hold that ratiopharm was the equitable owner of the stock. *See Silverstein v. David J. Stone and Co.*, 1990 WL 161092, at *3 (Del. Ch. 1990), and *Freeman v. Fabiniak*, 1985 WL 11583, at *8 (Del. Ch. 1985).

Because PVI had no equitable ownership interest in Martec, under Missouri law it could not bring a shareholders' derivative suit on behalf of Martec. *See Schwartz v. Custom Printing Co.*, 926 S.W.2d 490, 494-95 (Mo. Ct. App. 1996). PVI's standing as a stockholder, "and the concomitant right to bring a shareholder derivative action," *id.*, vanished when PVI exercised its irrevocable option to sell the Martec stock. *Id.* We therefore hold that the district court correctly granted summary judgment to ratiopharm on PVI's claim for breach of fiduciary duty by ratiopharm.

V.

We turn now to the district court's refusal to grant PVI interest on the amount due it for the Martec stock. As noted earlier, ratiopharm is entitled to purchase the Martec stock for $545,860, the price selected by the appraiser. PVI admits that ratiopharm tendered $545,860 for the Martec stock immediately following the valuation proceeding, but contends that because ratiopharm conditioned the tender on PVI's surrender of the Martec stock, PVI's refusal of the tender kept in place for PVI a right to receive interest.

-10-

PVI is not entitled to interest, however, because it is not owed any money: When PVI refused to tender the stock, ratiopharm was relieved of the obligation to pay for the stock until PVI did tender it. Unless PVI surrenders the stock, therefore, or offers to surrender it, there is no underlying debt that can support PVI's request for interest. *See Restatement (Second) of Contracts* § 354 at 150-54, comment b at 151 (1981). We thus hold that the district court correctly denied PVI's request for interest.

## VI.

PVI's final challenge is to the district court's award to ratiopharm of its attorneys' fees and prejudgment interest. Since we have determined that PVI is entitled to proceed with its claim for breach of contract, we are obligated, at the very least, to remand the case to the district court to determine what portion of ratiopharm's fees resulted from defending against that claim. PVI, however, objects to the award on several other grounds as well.

Ratiopharm based its request for fees on a provision of the stockholders' agreement that states that "[i]n the event of a default by a Stockholder under this Agreement, the non-defaulting party shall be entitled to recover all costs and expenses, including attorneys' fees, incurred as a result of the default or in connection with enforcement of this Agreement." PVI contends that ratiopharm is not entitled to any attorneys' fees at all because ratiopharm is not a "non-defaulting party."

As we have clearly indicated, however, ratiopharm was entitled to receive the Martec stock immediately following the valuation proceeding. By refusing to turn over the stock, PVI defaulted, giving rise to ratiopharm's right to specific performance. Any breach by ratiopharm did not affect its right to the stock once PVI chose to participate in the valuation proceeding. The district court was thus correct in awarding to ratiopharm the attorneys' fees incurred in obtaining specific performance of the stockholders' agreement.

-11-

In its motion for attorneys' fees, ratiopharm asserted a right to fees under Missouri law, and because the district court's order states that it "adopts the legal arguments in support [of ratiopharm's request] as its own," it appears to us that the district court applied Missouri law in its decision about attorneys' fees. As noted earlier, however, the stockholders' agreement (ratiopharm's basis for fees) specifies that it is to be governed by Delaware law. Federal courts sitting in diversity are required to look to the choice-of-law principles of the forum state (in this case, Missouri) and then apply the same law to the case as the forum state would. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496-99 (1941).

When a contract provides for attorneys' fees, Missouri law regards them as substantive rights created by the contract, and thus awards them in accordance with the substantive law applicable to the contract generally. *See Lowry v. Fidelity-Phenix Fire Insurance Co.*, 272 S.W. 79, 81-83 (Mo. Ct. App. 1925); *see also Dillard v. Shaughnessy, Fickel and Scott Architects, Inc.*, 943 S.W.2d 711, 719-20 (Mo. Ct. App. 1997), and *Restatement (Second) Conflict of Laws* § 207 at 673-77, comment e at 675 (1971). The Missouri courts generally enforce contractual choice-of-law provisions. *See Rheem Manufacturing Co. v. Progressive Wholesale Supply Co.*, 28 S.W.3d 333, 339 (Mo. Ct. App. 2000). Because the stockholders' agreement specifies that it is to be governed by Delaware law, we must apply Delaware law to ratiopharm's motion for fees.

Despite ratiopharm's contention that it is entitled to everything it owes or paid its attorneys because the contract allows for the recovery of "all ... attorneys' fees," Delaware law limits fee awards, including awards made under contractual provisions similar in all relevant respects to this one, to those fees that are reasonably incurred in the prosecution of the action. *See Princess Hotels, International, Inc. v. Delaware State Bar Association*, 1998 WL 283465, at *7 (Del. Super. 1998); *see also Rock v. Short*, 336 A.2d 219, 221 (Del. 1975). The reasonableness of attorneys' fees is to be evaluated under the factors listed in canon 2, DR 2-106(B), of the Delaware canons of

professional responsibility. *See General Motors Corp. v. Cox*, 304 A.2d 55, 57 (Del. 1973); *see also Council of Wilmington Condominium v. Wilmington Avenue Associates, L.P.*, 1999 WL 1223792, at *3 (Del. Super. 1999), citing Rule 1.5 of the Delaware rules of professional conduct, currently in effect and superseding the canons of professional responsibility. The district court's order awarding fees fails to address the basis for its finding that the fees were reasonable, leaving us unable to determine whether the fee award is reasonable under the rather specific standards established by Delaware law.

When attorneys' fees are awarded pursuant to a contract, moreover, the award of fees is limited to those specifically provided for in the contract. *See Council of Wilmington Condominium*, 1999 WL 1223792, at *2. The stockholders' agreement indicates that a party is liable for fees only if they are incurred "as a result of [a] default or in connection with enforcement" of the agreement. In granting ratiopharm's motion for fees, however, the district court gave ratiopharm the full amount of fees requested and apparently did not determine whether the fees met the requirements of the stockholders' agreement. For instance, it appears to us that fees incurred in defending against PVI's claim for breach of fiduciary duty are quite clearly not recoverable.

PVI also appeals from the district court's award of prejudgment interest on the fee award. This award appears to be based on Missouri law, but, for reasons similar to those adumbrated in our discussion of attorneys' fees, Delaware law should apply to an award of interest. *See Emerson Electric Co. v. Crawford and Co.*, 963 S.W.2d 268, 273 (Mo. Ct. App. 1997); *see also Restatement (Second) Conflict of Laws* § 207, comment e at 675. Upon remand, therefore, the district court should apply Delaware law in determining any request for prejudgment interest.

## VII.

For the foregoing reasons, we affirm the judgment of the district court in part and reverse it in part, and we remand for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.