# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 05-1103

_____

| | | |
|---|---|---|
| Surgical Synergies, Inc., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| Genesee Associates, Inc., | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Defendant/Third Party | * | District of Missouri. |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Ron Disney; Mike Bingham, | * | |
| | * | |
| Third Party Defendants - | * | |
| Appellees. | * | |

_____

Submitted: October 14, 2005
Filed: December 29, 2005

_____

Before ARNOLD, MURPHY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Third-party plaintiff Genesee Associates, Inc. ("Genesee") appeals the order of the district court[1] granting judgment on the pleadings to third-party defendants Ron Disney and Mike Bingham on Genesee's indemnification claim. For the reasons discussed below, we affirm the judgment of the district court.

I.     BACKGROUND

Genesee is in the business of providing management services for outpatient surgery centers. Before March 2002, Disney and Bingham collectively owned 100% of Genesee's stock. Beverly Kirchner, the president of Genesee since at least 1999, purchased all of Genesee's stock from Disney and Bingham in March 2002.

Genesee derives most of its income from a contract to provide management services to the New Iberia Surgery Center ("New Iberia"). In mid-2001, Genesee considered a potential merger with Surgical Synergies, Inc. ("SSI"), another provider of services to outpatient surgery centers.[2] While the companies investigated the potential for a merger, SSI assumed part or all of Genesee's duty to provide management services to New Iberia. At the same time, Kirchner and other Genesee employees performed the tasks of SSI employees. After a few months, Genesee and SSI decided not to complete the merger. By no later than January 30, 2002, SSI made a demand to Genesee for payment for the services SSI performed on the New Iberia contract on behalf of Genesee during the merger investigation period.

---

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

[2]SSI, the plaintiff below, is not involved in this appeal.

Kirchner began negotiating with Disney and Bingham to buy Genesee in early 2002. In March 2002, Kirchner purchased 100% of Genesee's stock from Disney and Bingham by executing a stock purchase agreement. Kirchner again considered completing the merger with SSI after she purchased Genesee, but those plans were never finalized.

Two paragraphs of the stock purchase agreement are at issue in this case:

**6.4** Other than obligations Genesee may have under the management contract between Genesee and New Iberia Surgery Center (the "Management Contract"), Genesee has no other liabilities, whether contingent or otherwise. Genesee has not assigned or otherwise transferred any rights or obligations under the Management Contract, and Genesee is not in default of any of its legal obligations under the Management Contract. Accounts receivable from New Iberia are a Genesee asset which accrue to Genesee.

* * *

**10.2(a)** Disney and Bingham, jointly and severally, agree to defend, indemnify, protect and hold harmless Kirchner, and her successors and assigns, from and against any damages, debts, liabilities, costs, losses and expenses incurred by Kirchner as a result of any breach of this Agreement by Disney and/or Bingham, or a breach by Disney and/or Bingham of any of the representations or warranties made by them in this Agreement.

SSI brought suit against Genesee in Missouri state court for payment for the services SSI performed on behalf of Genesee on the New Iberia contract during the merger investigation period. Genesee removed the case to federal district court based on diversity of citizenship. After Kirchner assigned her rights under the stock purchase agreement to Genesee, Genesee filed a third-party complaint against Disney and Bingham. Genesee claimed that the existence of any liability to SSI would breach ¶ 6.4 of the stock purchase agreement and that Disney and Bingham were bound to

indemnify Genesee, as Kirchner's assignee, under ¶ 10.2(a) for any amounts deemed owed to SSI.

Genesee settled SSI's claim for an undisclosed sum. Disney and Bingham moved for judgment on the pleadings on Genesee's third-party indemnification claim, and Genesee in turn moved for summary judgment against Disney and Bingham on that claim. The district court elected to grant Disney and Bingham's motion for judgment on the pleadings, considering the stock purchase agreement as part of the pleadings and finding that (1) the plain language of the stock purchase agreement disclosed Genesee's liability to SSI, so the liability to SSI could not constitute a breach, and (2) Genesee did not plead a loss by Kirchner sufficient to trigger the indemnification provision. Genesee appeals, arguing that the pleadings present an issue of material fact as to whether a breach occurred and that they allege a loss to Kirchner.

## II.    DISCUSSION

The district court concluded that ¶ 6.4 of the stock purchase agreement, which identified "obligations Genesee may have under the management contract between Genesee and New Iberia Surgery Center," disclosed the contested obligation to SSI. As an initial matter, we find that the district court reached this conclusion based on knowledge of the case gleaned from matters outside the pleadings.[3] Where the district

---

[3]The district court properly considered the stock purchase agreement along with the pleadings because it was attached to the complaint and was "necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (quoting *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997)); *see also Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (finding two published statements were properly considered with the pleadings for purposes of a motion to dismiss because the entire lawsuit was based on the statements and the parties did not dispute their content). However, the district court's determination of the parties' understanding of the liabilities disclosed by ¶ 6.4 of the

court considers matters outside the pleadings, a motion for judgment on the pleadings "shall be treated as one for summary judgment." Fed. R. Civ. P. 12(c). However, any error in a district court's failure to treat a motion for judgment on the pleadings as one for summary judgment "is harmless if the nonmoving party had an adequate opportunity to respond to the motion and material facts were neither disputed nor missing from the record." *Kerr v. Fed. Emergency Mgmt. Agency*, 113 F.3d 884, 885 (8th Cir. 1997) (quoting *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992)). In this case, as a result of Genesee's competing motion for summary judgment, both parties addressed the meaning of ¶ 6.4 of the stock purchase agreement in multiple briefs and exhibits and, as discussed below, no disputed material facts remain. Therefore, we find harmless any error in the district court's decision not to convert Disney and Bingham's motion for judgment on the pleadings to one for summary judgment.

Because the district court considered matters outside the pleadings, we review this case under the summary judgment standard, viewing the facts in the light most favorable to the nonmoving party and affirming if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Forest Park II v. Hadley*, 408 F.3d 1052, 1057 (8th Cir. 2005). In this diversity case, we apply the laws of the forum state, Missouri, to determine which state's law governs our interpretation of the stock purchase agreement. *Highwoods Props. v. Exec. Risk Indem., Inc.*, 407 F.3d 917, 920 (8th Cir. 2005). "The Missouri courts generally enforce contractual choice-of-law provisions." *PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 329 (8th Cir. 2001) (citing *Rheem Manufacturing Co. v. Progressive Wholesale Supply Co.*, 28 S.W.3d 333, 339 (Mo. Ct. App. 2000)). Paragraph 16 of the stock purchase agreement provides that it is to be governed by the substantive law of Texas.

---

stock purchase agreement required reference to exhibits introduced by the parties on Genesee's competing motion for summary judgment. These briefs and exhibits are outside the pleadings.

The decisive question in this case is whether, under ¶ 6.4 of the stock purchase agreement, Kirchner assumed the risk of a liability to SSI as an "obligation[] Genesee may have under the management contract between Genesee and New Iberia Surgery Center." Under Texas law, "a contract is ambiguous if it is susceptible to more than one reasonable interpretation." *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam). The court decides whether a contract is ambiguous as a question of law, "looking at the contract as a whole in light of the circumstances present when the parties entered the contract." *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996) (per curiam).

At the time the stock purchase agreement was drafted, the parties were aware that SSI had assumed all or part of Genesee's duties under the New Iberia management contract during the merger investigation period and that SSI had demanded payment for that work. In light of the circumstances present when the parties entered the contract, the phrase "obligations Genesee may have under the management contract between Genesee and New Iberia Surgery Center" is susceptible to two reasonable interpretations: referring either to (1) the Genesee obligations that may have been specifically identified in the New Iberia management contract, or (2) the Genesee obligations arising under the New Iberia management contract, including liabilities to SSI arising from SSI's performance of Genesee's duties under the New Iberia management contract. Therefore, ¶ 6.4 of the stock purchase agreement is ambiguous.

If a contract is ambiguous, extrinsic evidence is admissible "to give the words of a contract a meaning consistent with that to which they are reasonably susceptible." *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995) (per curiam). The extrinsic evidence in this case shows that Kirchner assumed the risk of a liability to SSI under ¶ 6.4 of the stock purchase agreement. Approximately one week before the execution of the stock purchase agreement, Disney sent an e-mail to Kirchner's attorney describing an agreement among Disney, Bingham and SSI

principal Mike Ribaudo that Disney and Bingham would leave assets in Genesee sufficient to cover fees owed to SSI at the time of the sale to Kirchner. *See* Third-Party Defendant's Memo in Opposition to Third-Party Plaintiff's Motion for Summary Judgment, Exhibit F. The e-mail and attached spreadsheet show how Disney and Bingham structured Genesee's accounts prior to the execution of the stock purchase agreement so that Genesee would have sufficient funds to pay SSI's claim after the purchase by Kirchner. *Id.*

Genesee attempts to show a disputed material fact by arguing that there is no evidence Kirchner agreed that the money Disney and Bingham left in Genesee would be used to pay SSI. Genesee cites deposition testimony from Disney in which Disney admits Kirchner never committed to pay SSI the money Disney and Bingham left in Genesee for that purpose. *See* Third Party Plaintiff's Response to Third Party Defendants' Memo in Opposition to Third-Party Plaintiff's Motion for Summary Judgment, at 10-13 and Exhibit F. However, it is not material whether Kirchner intended to admit Genesee's liability to SSI and pay on demand after she assumed ownership of Genesee. It is only material that Kirchner knew that under the stock purchase agreement, Disney and Bingham left money in Genesee to cover the management fees claimed by SSI under the New Iberia management contract "[i]f she chose to pay them." *Id.* at 11-12. Consequently, Kirchner knew that Disney and Bingham had no intention of bearing the risk of any potential liability to SSI after the stock purchase agreement was executed. It would not have been reasonable for Kirchner to conclude that the phrase "obligations Genesee may have under the management contract between Genesee and New Iberia Surgery Center" excluded Genesee's liabilities to SSI arising from SSI's performance of Genesee's duties under the New Iberia management contract.

In addition, a fax from Disney and Bingham's attorney to Kirchner's attorney just prior to the execution of the stock purchase agreement shows that an earlier draft of ¶ 6.4 expressly referred to Kirchner as assuming the risk of "obligations Genesee

may have under the management contract between Genesee and SSI ('Management Contract')." *Id.*, Exhibit I. Genesee contends that the removal of "SSI" from ¶ 6.4 of the penultimate draft of the stock purchase agreement evidences Kirchner's intent not to assume the risk of a liability to SSI. This contention is not supported by the circumstances. The fax states that Disney and Bingham felt that "SSI" should be changed to "New Iberia" in the final draft of ¶ 6.4 only because "there is no SSI management contract." *Id.* First, it was **Disney and Bingham**, not Kirchner, who suggested replacing "SSI" with "New Iberia," so the change yields no evidence about Kirchner's intent. Second, the evidence shows that Disney and Bingham replaced "SSI" with "New Iberia" because ¶ 6.4 refers to a "Management Contract," but there was no formal management contract with SSI governing its involvement with New Iberia. Disney and Bingham felt that if "SSI" were named as the antecedent reference to the "Management Contract," it might erroneously imply that Kirchner assumed the risk of SSI's claims only if those claims were based on a separate formal agreement with SSI. In other words, the drafting change was made to strengthen, not cancel, the inclusion of SSI's potential claims under the New Iberia management contract in the liabilities disclosed by ¶ 6.4.

In summary, Genesee raises no genuine issue of material fact as to whether Kirchner assumed the risk of a liability to SSI under ¶ 6.4 of the stock purchase agreement. Therefore, Disney and Bingham are entitled to judgment as a matter of law on Genesee's claim that they breached the stock purchase agreement. Because Genesee can prove no breach of the stock purchase agreement, the indemnity provision in ¶ 10.2(a) cannot be invoked, and we need not consider whether Genesee successfully pleaded an individual loss by Kirchner as required by that provision. Accordingly, we affirm the judgment of the district court.

## III. CONCLUSION

We conclude that the district court did not err in granting judgment to Disney and Bingham on Genesee's third-party indemnification claim.  Therefore, we affirm the judgment of the district court.

_____