(2008)
FERRO CORPORATION, Plaintiff,
v.
SOLUTIA INC., Defendant.
No. 4:08CV286-DJS.
United States District Court, E.D. Missouri, Eastern Division.
December 5, 2008.

ORDER
DONALD J. STOHR, District Judge.
Now before the Court is defendant Solutia, Inc.'s motion to dismiss plaintiff Ferro Corporation's complaint [Doc. # 22]. This matter has been fully briefed and is ready for disposition.

Standard of Review
In considering a motion to dismiss a complaint for failure to state a claim, the Court must assume all the facts alleged in the complaint are true, and must liberally construe the complaint in the light most favorable to the plaintiff. Schmedding v. Tnemec Co., 187 F.3d 862, 864 (8th Cir. 1999). A motion to dismiss should not be granted unless it appears, beyond a doubt, that the plaintiff can prove no set of facts which would allow relief. Id. Thus, as a practical matter, a dismissal for failure to state a claim should be granted only in a case in which a plaintiff includes allegations that show, on the face of the complaint, some insuperable bar to relief. Id. Generally, the Court must ignore materials that are outside of the pleadings; however, the Court may consider some materials that are part of the public record or those that are necessarily embraced by the pleadings. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir.1999); see also 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 299 (1990) (opining that a trial court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").

Facts
The following facts are those pled in plaintiff's complaint or contained in materials necessarily embraced by the pleadings,[1] and are accepted as true for purposes of the instant motion. On June 21, 2000, plaintiff and defendant entered into an asset purchase agreement that, among other things, contained defendant's agreement to convey to plaintiff certain real properties located in the State of New Jersey. One of the properties defendant agreed to convey to plaintiff is a riparian grant known as the Riparian Property, and another is a contiguous parcel of land known as the Uplands Property. Both properties are located in the County of Gloucester, Township of Logan, New Jersey. The Uplands Property is part of a larger tract owned by defendant, which the parties' agreement required to be subdivided prior to conveyance to plaintiff. To this end, defendant agreed to obtain approval for subdivision of the Uplands Property into three separate lots. Further, defendant agreed to use reasonable commercial efforts to secure the Uplands Property subdivision. Defendant agreed to convey to plaintiff the Riparian Property by quitclaim deed and the Uplands Property by special warranty deed, or its equivalent, contemporaneously.[2]
However, the parties' agreement contemplated the possibility that the Uplands Property subdivision would not occur. In that event, the parties' agreement contained the following language:
10.7.4. Purchaser and Seller agree that they will use their reasonable commercial efforts to cause the Subdivision to occur as soon as is reasonably practical, with the parties using their commercially reasonable efforts to cause the Subdivision to occur prior to the Closing Date. Seller and Purchaser acknowledge and agree that the Subdivision may not occur before or on the Closing Date, and the failure to so occur prior to or at such time shall not give rise to a reason by either Purchaser or Seller to fail to consummate the transactions contemplated hereby or a breach by either Seller or Purchaser or [sic] its obligations hereunder unless a party does not use its commercially reasonable efforts to cause the Subdivision to occur. Purchaser and Seller also acknowledge and agree that the Subdivision may never occur, whether due to the failure to obtain govern mental approval or otherwise, and such, failure shall not give rise to liability by either Purchaser or Seller to the other-party unless a party does not use its commercially reasonable efforts to cause the Subdivision to occur. If the Subdivision does not occur on or before June 30, 2001, then the parties agree that no further action by either Purchaser or Seller shall be required in order to effectuate the Subdivision, and the lease for the Delaware River Site entered into at Closing will be modified to 99 years so that the Purchaser and Seller shall be in the same position as if title to the real estate at the Delaware River Plant had been transferred to Purchaser (e.g. with Purchaser having all of the obligations of an owner of the leased premises, including maintenance, utilities and taxes).
Doc. # 23-3, p. 30 (emphases added); see also Doc. # 27, p. 4.
In 2000, defendant applied for subdivision with the Logan Township Planning Board. On September 14, 2000, the Logan Township Planning Board approved defendant's subdivision application, and adopted a resolution of approval on October 12, 2000. Instead of perfecting the subdivision by recording the subdivision deed and publishing notice of the resolution of the municipal approval within 190 days from the date of adoption of the resolution, defendant allowed the subdivision approval to lapse. Defendant reapplied for subdivision approval in early 2002, and on April 11, 2002, the Logan Township Planning Board adopted another resolution approving the subdivision. However, defendant again allowed the subdivision approval to lapse. Defendant then filed for bankruptcy on December 17, 2003, and emerged from bankruptcy on February 28, 2008. Defendant has not yet transferred title of either property to plaintiff.[3]
With regard to the Uplands Property, plaintiff alleges that defendant has refused and failed to use commercially reasonable efforts to resolve all environmental issues, perfect the subdivision, and execute and deliver to plaintiff a special warranty deed despite repeated demands to do so. Plaintiff further alleges that defendant's "breach of its obligations regarding the Uplands Property occurred at the earliest in August 2002, and as recently as late 2007 or early 2008, at which time [defendant] indicated its intention never to voluntarily pursue the Subdivision and transfer the Uplands Property to [plaintiff]." Doc. # 1, ¶¶ 33-34.
Plaintiff further alleges that the parties' agreement required defendant to transfer to plaintiff by quitclaim deed the Riparian Property at the same time plaintiff transferred the Uplands Property. Plaintiff alleges that defendant has refused and failed to use commercially reasonable efforts to resolve all environmental issues and execute and deliver to plaintiff a quitclaim deed to the Riparian Property despite repeated demands to do so. Plaintiff further alleges that defendant's "breach of its obligations regarding the Riparian Property occurred at the earliest in August 2002, and as recently as late 2007 or early 2008, at which time [defendant] indicated its intention never to voluntarily deliver the contractually required quitclaim deed to [plaintiff] for the Riparian Property." Doc. # 1, ¶¶ 37-38.
Plaintiff filed its complaint on February 29, 2008, bringing twenty claims for relief against defendant. Counts I through VI concern the Uplands Property. Count I alleges that defendant breached the parties' agreement, and seeks an order for specific performance requiring defendant to progress with all environmental and permitting issues, perfect the subdivision, and execute and deliver to plaintiff a special warranty deed conveying to it the Uplands Property. Count II alleges that defendant breached the parties' agreement, and seeks declaratory judgment interpreting the agreement and ordering that the terms of the agreement require defendant to use commercially reasonable efforts to progress with all environmental and permitting issues, perfect the subdivision, and execute and deliver to plaintiff a special warranty deed conveying to it the Uplands Property. Count III seeks damages for breach of contract. Count IV seeks damages for breach of the implied covenant of good faith and fair dealing. Count V seeks damages for unjust enrichment. Count VI seeks damages under a theory of promissory estoppel.
Counts VII through XIII concern the Riparian Property. Count VII alleges that defendant breached the parties' agreement, and seeks an order for specific performance requiring defendant to progress with all environmental and permitting issues and to execute and deliver to plaintiff a quitclaim deed conveying to it the Riparian Property. Count VIII alleges that defendant breached the parties' agreement, and seeks declaratory judgment interpreting the agreement and ordering that the terms of the agreement require defendant to use commercially reasonable efforts to progress with all environmental and permitting issues and to execute and deliver to plaintiff a quitclaim deed conveying to it the Riparian Property. Count IX seeks damages for breach of contract. Count X seeks damages for breach of the implied covenant of good faith and fair dealing. Count XI seeks damages for unjust enrichment. Count XII seeks damages under a theory of promissory estoppel. Alleging that the obligation to convey the Riparian Property to plaintiff is self-executing under the parties' agreement, Count XIII seeks an order from the Court quieting plaintiff's title to the Riparian Property.
Further, plaintiff alleges that it recently received a letter from a prospective purchaser stating that it was no longer interested in purchasing property from plaintiff due to defendant's conduct and intentional failure to fulfill its obligations under the parties' agreement. Consequently, Count XIV alleges tortious interference with prospective contractual relations, and seeks damages therefrom. Counts XV through XX were voluntarily dismissed by plaintiff. See Doc. # 34; October 21, 2008, Docket Text Order.

Discussion

Breach-of-Contract Claims
Defendant contends that the parties' agreement clearly imposes an obligation to use commercially reasonable efforts to effectuate a transfer until June 30, 2001, at which time such an obligation ceases.[4] Defendant argues that, considering plaintiffs allegations that defendant's breaches occurred at the earliest in August of 2002, plaintiff has failed to allege facts sufficient to support the current action because, as of August of 2002, defendant was not under any duty, allegedly breached, to perform.
Plaintiff opposes defendant's motion, and states that not only is defendant's current motion an effort to prematurely litigate the merits of the case, but that defendant's arguments conflict with the intent and terms of the parties' agreement. Plaintiff argues that the June 30, 2001, date is applicable only if defendant had used commercially reasonable efforts prior to June 30, 2001. Plaintiff argues that its complaint contains allegations regarding defendant's failure, prior to June 30, 2001, to use commercially reasonable efforts to effectuate a transfer, which extended defendant's transfer obligations past June 30, 2001. Plaintiff further argues that, as early as August of 2002, defendant's failure to transfer the properties constituted a breach of the parties' agreement.
In a diversity action, such as the one now before the Court, a district court is to apply the laws of the forum state to determine which state's law governs the interpretation of the parties' agreement. See Surgical Synergies, Inc. v. Genesee Assocs., 432 F.3d 870, 873-74 (8th Cir. 2005). In this case, Missouri is the forum state, so the Court will look to Missouri law to determine what state's law to apply. The Court notes that the parties' agreement contains a choice-of-law provision, which selects New York law as the governing law. "The Missouri courts generally enforce contractual choice-of-law provisions." Id. at 874 (quoting PVI, Inc. v. Ratiopharm GmbH, 253 F.3d 320, 329 (8th Cir.2001)). Accordingly, the Court will look to New York law when considering the instant motion.
Under New York law, "a breach of contract cause of action accrues at the time of the breach." Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 599 N.Y.S.2d 501, 615 N.E.2d 985, 986 (1993). "A cause of action for breach of contract accrues ... when the breach occurs or when a party to the agreement fails to perform an obligation." Ross Network, Inc. v. RSM McGladrey, Inc., 11 Misc.3d 1089(A), 819 N.Y.S.2d 851, 2006 WL 1160007, at *2 (N.Y.Sup. May 1, 2006).[5] Further, a party is liable for breach of contract only insofar as that party has a contractual obligation to perform. "[I]f there is no contractual obligation to perform an act, the failure to perform the act cannot be a breach of the contract." Havana Cent. NY2 LLC v. Lunney's Pub, Inc., 49 A.D.3d 70, 852 N.Y.S.2d 32, 37 (N.Y.Sup.2007) (citing Stratton Group, Ltd. v. Sprayregen, 458 F.Supp. 1216, 1218 (S.D.N.Y.1978) ("Clearly a breach [of contract] can only occur when one is under an obligation to perform in the first instance.")).
As an initial matter, the Court interprets the parties' agreement such that, if, prior to June 30, 2001, defendant used commercially reasonable efforts to effectuate a transfer of the properties, there was no obligation on defendant to perform any actions to effectuate the subdivision or transfer the properties after June 30, 2001. Indeed, this is the basis of defendant's argument, and plaintiff argues that the June 30, 2001, date was to take effect "only if [defendant] engaged in commercially reasonable efforts to effect the property transfers by then." Doc. # 27, p. 3.
Plaintiff argues that the conduct constituting the breach upon which it now sues was defendant's unequivocal rejection of its performance obligations regarding the transfer of the properties, which plaintiff argues occurred sometime in or after August of 2002. Plaintiff further argues that had defendant employed commercially reasonable efforts prior to June 30, 2001, as the agreement required, there would have been no claims to accrue in or after August of 2002. That is, plaintiff contends that it has alleged that defendant failed to use commercially reasonable efforts before June 30, 2001 (an allegation that defendant failed to perform an obligation imposed by the parties' agreement), which extended the transfer-by date and allowed defendant to breach its obligations in or after August of 2002 when defendant did not transfer the properties. However, under New York law, a cause of action accrues at the time of the breach or failure to perform an obligation. In this case, given the parties' agreement requiring commercially reasonable efforts to effectuate the transfer of the properties until June 30, 2001, plaintiffs action could not have accrued when defendant failed to transfer the properties at some unidentified moment in or after August of 2002, but rather must have accrued when defendant failed to use commercially reasonable efforts to effectuate a transfer of the properties before June 30, 2001. In other words, even if the Court were inclined to find that a pre-June 30, 2001, failure by defendant to use commercially reasonable efforts to effectuate a transfer would have extended defendant's transfer obligations past June 30, 2001, defendant's breach of its obligations could not have been, as plaintiff alleges, at the earliest in or after August of 2002. This is because without a pre-June 30, 2001 breach, defendant's contractual obligations with regard to transferring the properties expired on June 30, 2001.
Further, plaintiff argues that, for purposes of this motion, the Court must accept as true plaintiff's allegation that defendant did not use commercially reasonable efforts prior to June 30, 2001. However, plaintiff's complaint does not contain such an allegation. The Court notes that plaintiff's complaint contains general allegations describing the parties' conduct from the inception of the contract in 2000, which includes an allegation that defendant did not perfect the initial subdivision deed of the Uplands Property by late March of 2001.[6] Nevertheless, with regard to the Uplands Property, plaintiff specifically alleges in paragraph 34 of its complaint that defendant's "breach of its obligations regarding the Uplands Property occurred at the earliest in August 2002...." Similarly, plaintiff alleges that transfer of the Riparian Property was to occur contemporaneously with the Uplands Property, and in paragraph 38 of its complaint that defendant's "breach of its obligations regarding the Riparian Property occurred at the earliest in August 2002. ..." Plaintiffs express allegations contained in its complaint (that defendant's breach of its obligations occurred at the earliest in August of 2002), contravene plaintiffs current argument opposing dismissal (that the Court should find plaintiffs general allegations regarding defendant's pre-June 30, 2001, conduct as sufficiently alleging that defendant failed to fulfill its obligations imposed by the parties' agreement). Accordingly, defendant's contention that plaintiff has alleged a breach that occurred after the obligation to perform expired, and consequently has pleaded itself out of court, is well taken.
Plaintiff argues that it has alleged sufficient facts to support its claim that defendant failed to use commercially reasonable efforts to effectuate the property transfers, that such a failure negated the June 30, 2001 transfer-by date, and that defendant breached its obligations when it failed to transfer the properties in or after August of 2002. However, a review of plaintiffs complaint demonstrates that plaintiff clearly alleges defendant first breached its obligations in August of 2002. If, as plaintiff has pleaded, defendant first breached its obligations in 2002at which time defendant was under no obligation to perform in the first instanceplaintiffs breach-of-contract claims must be dismissed pursuant to New York law. Given plaintiffs explicit allegations, even liberally construing the complaint in a light most favorable to plaintiff, the Court finds that plaintiff has not alleged facts sufficient to support its claims that are based on defendant's breach of its obligations imposed under the parties' agreement. Accordingly, the Court will dismiss Counts I, II, III, VII, VIII, IX, XIII, and XIV.

Good Faith and Fair Dealing Claims
Counts IV and X allege that defendant breached implied covenants of good faith and fair dealing. Plaintiff bases these claims on the same facts as its breach-of-contract claims. That is, plaintiff bases these claims on its averments that defendant has refused and failed to use commercially reasonable efforts to progress with all environmental and permitting issues, perfect the subdivision, and transfer the properties.
New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." ARI and Co. v. Regent Intern. Corp., 273 F.Supp.2d 518, 522 (S.D.N.Y.2003) (quoting Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir.2002)). Applying New York law, courts have "consistently dismissed claims for breach of the implied covenant of good faith as `redundant where the conduct allegedly violating the implied covenant is also the predicate for breach ... of an express provision of the underlying contract.'" Id. (quoting TVT Records & TVT Music, Inc. v. The Island Def Jam Music Group, 244 F.Supp.2d 263, 277 (S.D.N.Y.2003)); see also Alter v. Bogoricin, 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997) ("[E]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of a covenant of good faith and fair dealing has dismissed the latter claim as duplicative."). Accordingly, applying New York law, the Court will dismiss Counts IV and X as duplicative.

Equitable Claims
Counts V, VI, XI, and XII assert claims of unjust enrichment and promissory estoppel. However, under New York law, "the existence of a `valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.'" Telecom Intern. Am., Ltd. v. AT & T Corp., 67 F.Supp.2d 189, 206 (S.D.N.Y.1999) (citing Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)). "[S]uch remedies only apply in the absence of an express agreement; for the remedy is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." Id. (quotation omitted); see also EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 799 N.Y.S.2d 170, 832 N.E.2d 26, 33-34 (2005) ("[P]laintiff fails to state a cause of action for unjust enrichment as the existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter.").
In this case, plaintiff alleges that an agreement between the parties existed. Further, the bases for plaintiff's unjust enrichment and promissory estoppel claimsthat is, the rights and obligations of the parties with regard to the transfer of the Uplands Property and the Riparian Propertyare subject matters contained within that agreement. Accordingly, pursuant to New York law, plaintiff's claims for unjust enrichment and promissory estoppel, as stated in Counts V, VI, XI, and XII, will be dismissed.
For the above stated reasons,
IT IS HEREBY ORDERED that the defendant Solutia, Inc.'s motion to dismiss [Doc. # 22] is granted.
NOTES
[1] In addition to the complaint, the Court has considered the parties' asset purchase agreement, Docs. # 23-2 and # 23-3, which is specifically referred to by plaintiff in its complaint and provided by defendant as an attachment to its motion to dismiss.
[2] Plaintiff, in its opposition to defendant's motion to dismiss, argues that the transfer of the Riparian Property was not dependent on the subdivision. However, the parties' agreement states that:

1.30. "Delaware River Site" shall mean... [defendant]'s Delaware River Plant, [and] all real estate thereat....
7.13.2. Subject to the terms of Section 10.7, title to the Delaware River Site ... will be conveyed by a Special Warranty Deed (or its equivalent), except the riparian rights at the Delaware River Site will be conveyed by quit claim deed....
10.7.1. .... Upon completion of the Subdivision, the Delaware River Plant real estate shall be conveyed to [plaintiff] as provided for elsewhere in this Agreement.
Doc. # 23-2, p. 16; Doc. # 23-3, pp. 15, 30. Further, as noted by the Court below, plaintiff alleges in its complaint that "defendant agreed in the APA to convey to [plaintiff] the Riparian Property by quitclaim deed and the Uplands Property by special warranty deed or its equivalent together at the same time." Doc. # 1, ¶ 14. Accordingly, by the terms of the parties' agreement and plaintiff's complaint, the Court finds that the Riparian Property was part of the Delaware River Site, the transfer of which was dependent on the completion of the subdivision.
[3] The Court notes that plaintiff does not allege that defendant failed to enter into a ninety-nine year lease with plaintiff as required by the agreement in the event no subdivision occurred by June 30, 2001.
[4] "If the subdivision does not occur on or before June 30, 2001, then the parties agree that no further action by either Purchaser or Seller shall be required in order to effectuate the Subdivision, and the lease for the Delaware River Site entered into at Closing will be modified to 99 years so that the Purchaser and Seller shall be in the same position as if title to the real estate at the Delaware River Plant had been transferred to Purchaser (e.g. with Purchaser having all of the obligations of an owner of the leased premises, including maintenance, utilities and taxes)." Doc. # 23-3, p. 30.
[5] Precise pleading of the accrual date of a cause of action is necessary for, among other reasons, properly levying defenses. See, e.g., Ely-Cruikshank, 599 N.Y.S.2d 501, 615 N.E.2d at 986 ("Generally, any Statute of Limitations begins to run when a cause of action accrues.... [T]he Statute runs from the time of the breach though no damage occurs until later.").
[6] Plaintiff alleges that the law governing the subdivision required that a subdivision deed for a minor subdivision be recorded within 190 days from the date of the adoption and publication of the resolution of the municipal approval. Plaintiff further alleges that the Logan Township Planning Board initially adopted a resolution of approval for the Uplands Property subdivision on September 14, 2000. Accordingly, by the Court's calculation, the initial resolution of approval lapsed, approximately, in March of 2001.